## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **TERESA HEARTSILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ASCENSION HEALTH ALLIANCE** | ) | |
| **d/b/a ASCENSION** | ) | |
| **d/b/a SAINT VINCENT HEALTH** | ) | **4:17-CV-155** |
| | ) | |
| **and** | ) | |
| | ) | |
| **SEDGWICK CLAIMS** | ) | |
| **MANAGEMENT SERVICES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW** Plaintiff Teresa Heartsill, by and through the undersigned counsel, and for her cause of action against Defendant Ascension Health Alliance d/b/a Ascension d/b/a Saint Vincent Health and Defendant Sedgwick Claims Management Services, Inc. respectfully states the following:

1.      This is an action arising under the Employee Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. (ERISA), to recover benefits due under an employee welfare benefit plan, to recover benefits due under an employee insurance program, to redress breaches of fiduciary duties under ERISA, and to recover costs, attorneys' fees and interest as provided by ERISA.

2.      This is an action brought pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. §1331. Under 29 U.S.C. § 1132(f), the Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

3.      Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2), in that the subject employee welfare benefit plan and employee insurance program are administered in this District, the breaches of duty herein alleged occurred in this District, and all Defendants reside or are found in this District.

4.      Plaintiff Teresa Heartsill brings this suit as a participant under the Ascension Long Term Disability Plan ("The Plan").

5.      The Plan provided for the long-term disability benefits for the employees of St.Vincent Hospital, Mrs. Heartsill's employer.

6.      Plaintiff Teresa Heartsill ("Mrs. Heartsill") is a resident of Lowndesboro, Alabama.

7.      Defendant Ascension Health ("Ascension") is a Non-Profit Corporation incorporated, operating, and in good standing in the State of Missouri.

8.      Defendant Sedgwick Claims Management Services, Inc. (hereinafter "Sedgwick") is a foreign corporation, incorporated in Illinois but registered, operating, and transacting its usual business in the State of Missouri.

9.      Defendant Ascension Health Alliance is a non-profit corporation, incorporated, operating, and in good standing in the State of Missouri.  Ascension Health Alliance is the civil law organization created under Missouri law to oversee Ascension Health Ministries so that the canonical ministries of Ascension Health Ministries may be carried out.  Ascension Health

Alliance is the plan sponsor and plan administrator of the Plan as those terms are defined by 29

U.S.C. § 1002.

10**.**    Saint Vincent Health, located in Alabama, is a subsidiary and member of

Ascension.

11.    Mrs. Heartsill's health had deteriorated by 2013.

12.    In November of 2013 Dr. Joel Abbott (Rheumatologist) documented Mrs.

Heartsill's rheumatoid arthritis, fibromyalgia, osteoarthritis, persistent widespread

musculoskeletal pain, difficulty working, pain in the left lower extremity, intermittent numbness

in her left hand, intermittent discomfort in her fingertips, cramping discomfort in both hands,

pain in the left more than the right shoulder, pain in the right more than the left knee, swelling in

the right knee, intermittent swelling in the ankles and feet, fatigue, weakness, difficulty sleeping,

joint pain, joint swelling, morning stiffness lasting 30 -60 minutes, muscle tenderness,  swelling

in her legs, tenderness in the left forefoot area, tenderness in right knee more than left knee, mild

swelling over the right knee, painful right knee range of motion with crepitus, painful and limited

left hip internal and external rotation, tenderness in her trapezius and parapsinous musculature,

tenderness in her glutes, and lower lumbar tenderness.

13.    In November of 2013 Dr. Abbott injected Mrs. Heartsill's right knee to help with

her pain.

14.    In November of 2013 Dr. Abbott started Mrs. Heartsill on biweekly 40 mg

Humira injections.

15.    November of 2013 lab results provided additional objective evidence of Mrs.

Heartsill's rheumatoid arthritis (RA) and fibromyalgia diagnoses. Specifically, lab analysis

revealed Mrs. Heartsill's high erythrocyte sedimentation rate (ESR) of 44 mm / hr. and high C-

reactive protein (CRP) level of 19.2 mg/L. The normal range of ESR for women is 0 – 29 mm/hr. and a normal CRP level is below 1 mg / L.

16.     In November of 2013 Dr. Michael Rodriguez injected Mrs. Heartsill's left hip joint in an effort to reduce pain.

17.     In November of 2013 Dr. Abbott completed a form for Ascension / Sedgwick telling them about Mrs. Heartsill's swollen right knee, trapezius and paraspinus tenderness, painful joints, swollen joints, fatigue, weakness, morning stiffness, muscle tenderness, and her RA and fibromyalgia diagnosis.

18.     An MRI taken in January of 2014 of Mrs. Heartsill's left hip provided additional objective evidence of Mrs. Heartsill's arthritis.  Specifically, the MRI revealed abnormal edema related to degeneration, diffuse loss of cartilage, degenerative labral tearing, effusion with synovitis; as well as, gluteus medius and minimus tendinosis with left trochanteric bursitis.

19.     January of 2014 lab results provided additional objective evidence of Mrs. Heartsill's rheumatoid arthritis (RA) and fibromyalgia diagnoses. Specifically, lab analysis revealed Mrs. Heartsill's high erythrocyte sedimentation rate (ESR) of 48 mm / hr. and high C-reactive protein (CRP) level of 19.2 mg/L.

20.     In January of 2014 Dr. Simona Dunlap (internal medicine) documented Mrs. Heartsill's struggles with RA, fibromyalgia, her body feeling on fire, hand pain, and numbness into her fingertips to the point that she dropped things.

21.     In January of 2014 Dr. Potts and Dr. Cain at Andrews Sports Medicine and Orthopaedic Center documented Mrs. Heartsill's left wrist pain, swollen wrist, and tender wrist, due to bony edema and a radioscaphoid ligament tear.

22.     An MRI taken in January of 2014 of Mrs. Heartsill's left wrist provided additional objective evidence of Mrs. Heartsill's arthritis and inflammation issues. Specifically, the MRI revealed degeneration of Mrs. Heartsill's thumb carpal-metacarpal joint and radial carpal joints, middle and ring finger CMC joints, and degeneration and inflammation throughout her carpus and MCP joints.

23.     In January of 2014 Dr. Abbott completed another form for Ascension / Sedgwick documenting Mrs. Heartsill's swollen right knee, tender trapezius and paraspinus, painful joints, swollen joints, fatigue, weakness, morning stiffness, tender muscles, RA diagnosis, and fibromyalgia diagnosis.

24.     An MRI taken in February of 2014 of the left wrist revealed Mrs. Heartsill suffered a severe left wrist sprain with an occult nondisplaced fracture.

25.     February of 2014 lab results revealed Mrs. Heartsill's CRP remained high at 8.8 mg / L despite treatment.

26.     In February of 2014 Dr. Abbott documented Mrs. Heartsill's continued struggles with fibromyalgia, RA, generalized osteoarthritis, left hip osteoarthritis, chronic left hip pain, and widespread musculoskeletal pain.

27.     In February of 2014 Dr. Abbott documented Mrs. Heartsill's difficulty with prolonged sitting standing, difficulty walking, and difficulty with weight bearing on her left hip.

28.     An MRI taken in February of 2014 of the left hip provided additional objective evidence of Mrs. Heartsill's chronic degenerative conditions. Specifically, the MRI revealed degenerative changes, acetabular area changes, and a possible insufficiency / stress fracture.

29.     In February of 2014 Dr. Abbott documented Mrs. Heartsill's swollen and painful joints, tender muscles, swollen legs, heartburn, swelling over the small joints in her hands, tender

knees, tender hips, painful knee range of motion, painful hip range of motion, tender trapezius and paraspinous musculature, and that her fibromyalgia left her sore to the touch over several muscle groups

30.    Dr. Lyle Cain operated on Mrs. Heartsill's left wrist in February of 2014.

31.    Ascension / Sedgwick agreed that Mrs. Heartsill was disabled per the terms of the policy and paid her monthly long term benefits.

32.    In February of 2014 Dr. Abbott completed another form for Ascension / Sedgwick documenting Mrs. Heartsill's RA diagnosis, swollen hand joints, swollen left wrist, tender in forefoot area, tender knees, tender hips, painful knee range of motion, painful hip range of motions, tender trapezius and paraspinus musculature.

33.    In February of 2014 Dr. Abbott completed another form for Ascension / Sedgwick documenting that Mrs. Heartsill conditions left her unable to lift, walk up / down stairs, easily position patients; further, she suffered with pain through her entire body, and per Dr. Abbott Mrs. Heartsill's conditions left her totally disabled from Mrs. Heartsill's own occupation.

34.    In February of 2014 Dr. Jeffery Davis (orthopedic surgeon) documented Mrs. Heartsill's sleep apnea, back pain, painful joints, swollen joints, fibromyalgia, osteoarthritis, and RA.

35.    On March 10, 2015 Mrs. Heartsill's chronic degenerative conditions resulted in Dr. Jeffery Davis performing a total left hip arthroplasty.

36.    In March of 2015 Dr. Marl Maldia (internal medicine) assisted Mrs. Heartsill with post – op pain management and documented Mrs. Heartsill's RA, fibromyalgia, degenerative joint disease, joint pain in places other than her hip, lower back pain, and generalized arthritis.

37.    At her March 25, 2014 post-op follow up, Dr. Davis documented her right side numbness and back issues.

38.    In March of 2014 doctors at Andrews Sports Medicine and Orthopaedic Center completed a form for Ascension / Sedgwick documenting Mrs. Heartsill's degenerative left hip arthritis, her total disability, and "no work" restriction.

39.    On April 1, 2014 Sedgwick noted that Mrs. Heartsill's "severe pain" caused by RA and fibromyalgia put her out of work as of November 8, 2013.

40.    In April of 2014 Dr. Dunlap documented Mrs. Heartsill's diffuse body aches, pain in multiple joints, fibromyalgia, RA, gastroesophageal reflux disease (GERD), and swollen legs.

41.    On April 17, 2014 Sedgwick acknowledged that the medical supported approval of benefits.

42.    On April 17, 2014 Sedgwick acknowledged that Mrs. Heartsill's rheumatoid arthritis is what originally forced her out of work.

43.    Rheumatoid arthritis is a chronic condition with no cure.

44.    On April 17, 2014 Sedgwick noted that although RA originally forced Mrs. Heartsill to stop working, she was now disabled due to recovery from total hip replacement.

45.    Mrs. Heartsill's RA was not cured as of April 17, 2014, is not currently cured, and is not expected to be cured.

46.    In April of 2014 Dr. Abbott documented Mrs. Heartsill's RA, fibromyalgia, generalized osteoarthritis, hip osteoarthritis, chronic left hip pain, total left hip arthroplasty, right hip pain, widespread pain, continued daily pain despite taking Humira,  pain when she is touched, right knee pain, ankle pain, hand pain, right hand numbness - possible carpal tunnel syndrome, feeling of thickness in her knuckles, swelling over her small hand joints, tender

shoulders with painful bilateral shoulder range of motion, tender forefoot areas, swollen forefoot, tenderness knees, crepitus in the knees, painful knee range of motion, painful hip range of motion, restricted left hip movement, tender trapezius and paraspinous musculature, and gluteal tenderness.

47     In April of 2014 Dr. Abbott noted Mrs. Heartsill's high ESR (30 mm / hr.) and high CRP (19.2 mg / L).

48.     At her post-op follow up on April 25, 2014, Dr. Davis documented that Mrs. Heartsill's hips were pretty bad, she limped, and used a cane.

49.     On May 8, 2014 Dr. Abbott completed Sedgwick's disability update form and documented Mrs. Heartsill's primary diagnosis of RA,  her swollen joints, swollen left wrist, tender forefoot areas, tender knees, tender hips, painful knee range of motion, painful hip range of motion, tender trapezius and paraspinious musculature.

50.     On May 8, 2014 Dr. Abbott completed Sedgwick's disability update form, telling Ascension / Sedgwick that Mrs. Heartsill cannot lift, cannot walk up/down stairs, had issues positioning patients, and had pain all over her body.

51.     On May 8, 2014 Dr. Abbott completed Sedgwick's disability update form, telling Ascension / Sedgwick that Mrs. Heartsill can never return to full duty, can never return to light duty work, and that Mrs. Heartsill is totally and permanently disabled from any and all gainful employment.

52.     On or about May 16, 2014 Dr. Davis documented Mrs. Heartsill's left hip pain, dependence on a cane, slow ambulation even with a cane, favoring of the left hip, right hip pain, significant degenerative arthritis in  her right hip, and pain shooting from her back into her leg.

53.     In her June 6, 2014 letter, Sheila Ball, Sr. LTD Case Specialist, further told Mrs. Heartsill, on behalf of Ascension / Sedgwick that "[s]ince we received insufficient medical information regarding your medical history and your condition, we must deny your claim."

54.     Ascension / Sedgwick asserted that Mrs. Heartsill's claim for Long Term Disability suffered from a "lack of proof."

55.     Mrs. Heartsill's RA was not cured as of June 6, 2014, is not currently cured, and is not expected to be cured.

56.     The record lacks proof of a change of Mrs. Heartsill's circumstances justifying Ascension / Sedgwick denying Mrs. Heartsill her Long Term Benefits as of June 6, 2014.

57.     On or about July 9, 2014 Mrs. Heartsill told Ascension / Sedgwick, via telephone call, that she still had issues with the hip that Dr. Davis surgically replaced.

58.     On or about August 14, 2014 Sedgwick noted in an initial clinical review that Mrs. Heartsill alleged disability due to osteoarthrosis.

59.     Osteoarthritis gradually worsens with time, and no cure exists; additionally, Mrs. Heartsill suffered from disabling conditions other than osteoarthritis.

60.     On or about August 19, 2014 Sedgwick noted the severity of Mrs. Heartsill's condition including recovery from left hip total arthroplasty complicated by rheumatoid arthritis with symptoms of painful joints, tenderness over joints, abnormal labs, medication changes.

61.     On August 19, 2014 Dr. Abbott documented Mrs. Heartsill's continued pain, 2 hours of morning stiffness, joint pain, swollen joints, low back pain, burning pain in her left buttock, difficulty walking due to pain in her ankles, swollen ankles, knee pain requiring injections at this visit, rheumatoid arthritis, widespread musculoskeletal pain, osteoarthritis,

fibromyalgia, osteopenia, and her opioid analgesic pain regimen including up to 4 dosages of

Norco per day.  Further, her ESR and CRP levels remained high.

62.    On or about August 21, 2014 Dr. Abbott completed another disability update for

Ascension / Sedgwick; this time reporting to them that Mrs. Heartsill is totally disabled due to

rheumatoid arthritis, she cannot lift, go up or down stairs, had issues positioning patients, will

never be able to return to full duty, will never be able to perform light duty work, and was totally

and permanently disabled from any and all gainful employment.

63.    On or about August 21, 2014 Dr. Abbott further reported to Ascension / Sedgwick

Mrs. Heartsill's swollen hand joints, swollen wrist, tender forefoot areas, tender knees, painful

knees range of motion, painful hip range of motion, tender trapezius and paraspinous

musculature.

64.    On December 30, 2014 Dr. Abbott documented Mrs. Heartsill's persistent pain (

7.5 / 10 on this date), painful joints, swollen joints, 2 hours of stiffness each morning, burning

discomfort associated with weakness, tender muscles even with Enbrel, more back pain, lower

back discomfort, inflamed synovium in her right hip, heartburn, red / itching eyes, headache,

numbness, memory difficulties, persistent tenderness over both shoulders, painful bilateral

shoulder range of motion, limitations with shoulder abduction, forefoot tenderness, ankle

tenderness, tender knees, crepitus in her knees, painful knee range of motion, painful hip range

of motion, tender trapezius and paraspinous musculature.  Further, she took Norco and Percocet,

both of which are opioid medications, for pain control daily and nightly.

65.    In December of 2014 Mrs. Heartsill continued to have abnormally high lab results

66.     On or about February 10, 2015 Sedgwick noted that Mrs. Heartsill's doctor told them that Mrs. Heartsill will never return to work because she is totally and permanently disabled.

67.     On March 31, 2015 Dr. Abbott examined Mrs. Heartsill and wrote her an order for handicap parking covering a number of years. In addition, he documented Mrs. Heartsill's increased hand pain, increased hip pain, increased knee pain, tender and swollen hand joints, tenderness over both wrists, persistent bilateral shoulder tenderness with painful bilateral range of motion, restricted / limited shoulder abduction, forefoot tenderness, tender ankles, tender knees with crepitus, painful knee and hip range of motion, limited and painful right hip internal and external rotation with left hip internal and external rotation only marginally better, tender trapezius and paraspinous musculature, gluteal tenderness.  Further, Dr. Abbott documented Mrs. Heartsill's multiple diagnoses, including, rheumatoid arthritis and subsequent use of immunosuppressive therapy; generalized osteoarthritis, fibromyalgia, osteopenia. Additionally, Dr. Abbott documented Mrs. Heartsill's continued opioid pain management regimen.

68.     On March 31, 2015 Mrs. Heartsill's lab results revealed that her ESR remained elevated at 44 mm / hr.

69.     On April 29, 2015 Dr. Davis evaluated Mrs. Heartsill's right hip and documented Mrs. Heartsill's chronic pain, fibromyalgia, rheumatoid arthritis, left hip muscle pain, right groin pain, right thigh pain, right hip pain, and right knee pain.

70.     On April 29, 2015 Mrs. Heartsill's chronic arthritis and other conditions resulted in Dr. Davis scheduling her for right hip replacement surgery.

71.     On or about June 30, 2015 Sedgwick again noted / documented that Mrs. Heartsill's doctor told Ascension / Sedgwick that Mrs. Heartsill's condition rendered her totally and permanently disabled and unable to work.

72.     On July 22, 2015 a MRI of Mrs. Heartsill's cervical spine revealed degenerative changes to her spine with foraminal narrowing at C3-C4.

73.     On July 22, 2015 Dr. Abbott documented Mrs. Heartsill's increased musculoskeletal symptoms, hip pain, knee pain, upcoming right hip arthroplasty, cervical spine pain with radiation into her left arm accompanied by intermittent numbness in her left hand, widespread pain worsened with touch, pain that awakens her at night, difficulty with activities of daily living,  daily use of Percocet and Norco, bilateral shoulder tenderness with painful range of motion, tenderness over her feet, tender ankles, tender knees, severely limited and painful right hip internal and external rotation, lumbar tenderness,  bilateral tenderness in her trapezius musculature, and then injected both of her knees.

74.     On July 22, 2015 Dr. Abbott documented Mrs. Heartsill's diagnoses, including, RA with persistent hip and knee symptoms with associated immunosuppressive therapy, fibromyalgia, osteoarthritis, and osteopenia.

75.     On August 17, 2015 Mrs. Heartsill's chronic degenerative diseases resulted in Dr. Davis performing a total right hip arthroplasty.

76.     As of August 17, 2015 Mrs. Heartsill's still suffered, among other conditions, from incurable rheumatoid arthritis, and incurable osteoarthritis.

77.     Approximately a month after Dr. Davis surgically replaced Mrs. Heartsill's right hip, Ascension / Sedgwick sent Mrs. Heartsill a letter informing her that the definition of disability changed from the own occupation definition to the any occupation standard.

78.    On or about October 5, 2015 Sedgwick noted and acknowledged Mrs. Heartsill's second total hip replacement and documented that they were aware her medical provider gave her a return to work date of "never."

79.    On October 28, 2015 Dr. Abbott documented Mrs. Heartsill's second hip replacement, use of a cane to walk, daily use of Percocet and Norco, hand pain, wrist pain, difficulty with activities of daily living, tender wrists, tender knees, swollen knees, tender ankles, limited range of motion in her right hip, tender lumbar spine; tender bilateral trapezius musculature; further, he noted her RA, fibromyalgia, and osteoarthritis diagnoses.

80.    On October 28, 2015 Mrs. Heartsill's ESR measured 33 mm / hr., while her CRP measured 5.1 mg / L, both of which are abnormally high readings.

81.    On November 3, 2015 Dr. Davis documented Mrs. Heartsill's neuropathic pain, use of a cane to walk, and a couple of falls.

82.    Beginning in December of 2015 Ascension / Sedgwick discussed having Mrs. Heartsill go through a functional capacity evaluation.  Ascension / Sedgwick never sent Mrs. Heartsill to a functional capacity evaluation provider.

83.    Instead of sending Mrs. Heartsill for a functional capacity evaluation, Ascension / Sedgwick hired Network Medical Review Co., Ltd, An ExamWorks Company (NMR) on or about January 8, 2016 to review medical records.

84.    NMR offers functional capacity evaluations.

85.    NMR sent medical documents to Dr. Dennis Payne, Jr (Dr. Payne). Dr. Payne never saw or examined Mrs. Heartsill.  Dr. Payne never spoke to Mrs. Heartsill.  Dr. Payne attested that he "was not involved with the specific episode of care prior to referral of the case for review."

86.     On or about January 14, 2016 NMR submitted Dr. Payne's report to Ascension / Sedgwick.

87.     Dr. Payne acknowledged Mrs. Heartsill's rheumatoid arthritis, fibromyalgia, osteoarthritis, synovitis in her hands, synovitis in her wrists, synovitis in her feet, diffuse joint tenderness related to fibromyalgia, and her elevated acute phase reactants.

88.     Dr. Payne incorrectly stated that Mrs. Heartsill had a normal ESR rate on 10/28/15.

89.     Dr. Payne opined that her hip issues rendered Mrs. Heartsill unable to work in 2014 and 2015 but that in his opinion, which he arrived at without physically examining her, that she was fine to return to her regular job as of 11/4/15.

90.     On or about January 11, 2016 Mrs. Heartsill completed Ascension / Sedgwick's daily activity document.  She reported continued use of a cane, walking with a limp, needing  a stool to shower, being unable to fully bend over, wearing only dresses and slip on shoes, needing a grabber for socks and underwear, low back pain, swollen and throbbing legs, and being unable to drive.

91.     On January 18, 2016 Dr. Abbott again completed a form telling Ascension / Sedgwick that Mrs. Heartsill "is totally and permanently disabled from any and all gainful employment."

92.     On January 18, 2016 Ascension / Sedgwick sent an urgent request asking that document reviewer Dr. Payne address his incorrect claim that Mrs. Heartsill had a normal ESR level on October 28, 2015

93.      On January 20, 2016 document reviewer Dr. Payne reported to Ascension / Sedgwick that in his opinion, at Mrs. Heartsill's age, her ESR is high if it is over 26 mm / hr.,.

94.    The medical records Dr. Payne reviewed indicated that Mrs. Heartsill's ESR rate was 33 mm / hr., which is higher than 26 mm / hr.

95.    Document reviewer Dr. Payne is of the opinion that Mrs. Heartsill's obesity raised her ESR; however, his report is silent as to the maximum acceptable ESR.

96.    After document reviewer Dr. Payne identified and discussed Mrs. Heartsill's obesity, he admitted that it is "reasonable to conclude the ESR is elevated in this case consistent with inflammation."

97.    In document reviewer Dr. Payne's opinion the objective proof of ongoing inflammatory process in Mrs. Heartsill's body did not change anything regarding Mrs. Heartsill's ability to return to her job.

98.    In January of 2016 Ascension / Sedgwick denied Mrs. Heartsill's claim, again, for lack of proof.

99.    In January of 2016 the Social Security Administration determined Mrs. Heartsill's conditions left her disabled.

100.    On February 10, 2016 Dr. Abbott documented Mrs. Heartsill's health problems, including RA, fibromyalgia, osteoarthritis, opiate use for pain, use of high risk medications for pain, right hip arthroplasty, left hip arthroplasty, increased musculoskeletal symptoms, neck pain, shoulder pain, upper back pain, wrist pain, hip pain, knee pain, swollen knees, increased temporomandibular joint symptoms, difficulty with activities of daily living, fatigue, weakness, pain affecting sleep, morning stiffness lasting 1 -2 hours; neuro positive for burning pains, memory difficulty, painful shoulder range of motion, tenderness over her knees and ankles, tenderness over the trochanteric area,  tenderness in her lumbar spine,  tenderness in the lower

cervical spine, tenderness in the trapezius musculature, and elevated labs indicative of inflammatory process.

101.    On February 22, 2016 Dr. Michael Koslin (oral and maxillofacial surgeon) documented Mrs. Heartsill's jaw joint problems, including multiple trigger points and crunching sounds.

102.    On March 1, 2016 an MRI revealed degenerative arthritis of her jaw. Specifically, the MRI revealed narrowed disc space, degenerated meniscus, perforated meniscus, and an anteriorly displaced meniscus.

103.    On March 10, 2016 Ascension / Sedgwick sent Mrs. Heartsill a letter asking her to pay Ascension / Sedgwick $42,974.99 that she received as a result of the Social Security Administration finding her disabled. Mrs. Heartsill promptly paid Ascension / Sedgwick in full.

104.    On April 18, 2016 Mrs. Heartsill sent in the Ascension / Sedgwick appeal form outlining a number of issues with Ascension / Sedgwick's termination of her benefits – including, their focus on her bilateral hip replacement surgeries and minimization of her rheumatoid arthritis and fibromyalgia, ignoring Dr. Abbott's multiple communications informing them she is permanently disabled from any and all gainful employment, ignoring the impact of her opioid pain management regimen, and their belief that her arthritis is curable.

105.    On April 20, 2016 Mrs. Heartsill's chronic arthritic condition resulted in Dr. Koslin performing a bilateral open joint arthrotomy to her face / jaws. Further, a biopsy of her jaws' disc contents revealed basophilic degeneration and chronic inflammation.

106.    On May 24, 2016 Dr. Abbott wrote to Ascension / Sedgwick to, again, tell them that Mrs. Heartsill suffered from widespread musculoskeletal pain caused by her rheumatoid

arthritis, fibromyalgia, and osteoarthritis.  He reiterated that her conditions caused her to suffer significant pain and disability to the point she cannot work in any capacity.

107.    On May 5, 2016 Mrs. Heartsill spoke to an Ascension / Sedgwick representative and confirmed she had not returned to work and could not return to work.

108.    On June 2, 2016 Mrs. Heartsill informed Ascension / Sedgwick that she still has rheumatoid arthritis, fibromyalgia, pain, cannot move around much, cannot work, and Dr. Abbott would just tell them the same thing he told them on May 24, 2016.

109.    In June of 2016 Ascension / Sedgwick hired Dane Street (record reviewing company) to secure reports from medical record reviewers.

110.    On June 21, 2016 Dane Street submitted Dr. N. Nichole Barry's (rheumatology) report to Ascension / Sedgwick.

111.    Record reviewer Barry did not see, examine, or speak to Mrs. Heartsill as part of her review for Ascension / Sedgwick.

112.    Record reviewer Barry attested and alleged that her work on this medical case was "not intended to create a patient / doctor relationship" with Mrs. Heartsill.

113.    Despite the extensive documents available for review and the undisputed diagnoses, record reviewer Barry opined that Mrs. Heartsill's rheumatoid arthritis was well controlled with no evidence of active rheumatoid arthritis after January 1, 2016.

114.    Document reviewer Barry noted that Dr. Abbott's office charged $75.00 for Dr. Abbott's time to discuss his patients' medical conditions with third parties.

115.    In lieu of paying Dr. Abbott for his time, Ascension / Sedgwick reported to Mrs. Heartsill that the Dr. Abbott "teleconference was unsuccessful."

116.    On June 23, 2016 Dane Street submitted Dr. Berry Berman, D.D.S.'s report to Ascension / Sedgwick.

117.    Record reviewer Berman did not see, examine, or speak to Mrs. Heartsill as part of his review for Ascension / Sedgwick.

118.    Record reviewer Berman attested and alleged that his work on this medical case was "not intended to create a patient / doctor relationship" with Mrs. Heartsill.

119.    Record reviewer Berman acknowledged the undisputed diagnoses and conditions, including, rheumatoid arthritis, two hip replacements, osteoarthritis, fibromyalgia, back pain, and bilateral knee pain.

120.    Record reviewer Berman noted that arthritic conditions impacted Mrs. Heartsill's jaws to the point they made crunching sounds, perforated the meniscal tissues, and required open joint arthrotomy due to bilateral internal derangement.

121.    On June 23, 2016 Dane Street submitted Dr. Patrick Young's psychiatric report.

122.    Record reviewer Young did not see, examine, or speak to Mrs. Heartsill as part of his review for Ascension / Sedgwick.

123.    Record reviewer Young attested and alleged that his work on this medical case was "not intended to create a patient / doctor relationship" with Mrs. Heartsill.

124.    Record reviewer Young stated that the "claimant's depression is not significant." "[Mrs. Heartsill] has fibromyalgia, and she also recently had a hip replacement."  Further, "[s]he has pain issues." Finally, "[i]t is common to develop a secondary depressed mood when these are issues that have to be dealt with."

125.    On July 11, 2016 Dane Street sent Dr. Carol Hulett's report to Ascension / Sedgwick.

126.    Record reviewer Hulett did not see, examine, or speak to Mrs. Heartsill as part of her review for Ascension / Sedgwick.

127.    Record reviewer Hulett attested and alleged that her work on this medical case was "not intended to create a patient / doctor relationship" with Mrs. Heartsill.

128.    Document reviewer Hulett noted that Dr. Abbott's office charged $75.00 for Dr. Abbott's time to discuss his patients' medical conditions with third parties.

129.    In lieu of paying Dr. Abbott for his time, Ascension / Sedgwick again reported to Mrs. Heartsill that the Dr. Abbott "teleconference was unsuccessful."

130.    Document reviewer Hulett noted the undisputed diagnoses and conditions included bilateral hip replacement, osteoarthritis, rheumatoid arthritis, fibromyalgia, back pain, bilateral knee pain, and severe depression; however, document reviewer Hulett determined, in her opinion, that Mrs. Heartsill was not disabled.

131.    Ascension / Sedgwick paid, at least, the following to the document reviewing companies:

Psychiatry Fee - $550.00

Rheumatology Fee - $475.00 plus $100.00 to additional providers = $575.00

Network Medical Review Company - $395.00

132.    Despite paying medical reviewers who did not examine Mrs. Heartsill hundreds of dollars each, Ascension / Sedgwick refused to pay Dr. Abbott's office $75.00 for Dr. Abbott's time to talk about his lengthy treatment of Mrs. Heartsill.

133.    On July 19, 2016 Ascension / Sedgwick generated a letter to the claimant, Mrs. Heartsill, informing her that they denied her appeal.

134.    Mrs. Heartsill has exhausted her administrative remedies.

135.    Mrs. Heartsill's multiple chronic health conditions result in restrictions and limitations that prevent her from performing the material duties of any occupation.

136.    Mrs. Heartsill's illnesses and corresponding symptoms have resulted in restrictions and limitations that have prevented her from returning to work from her last day through present.

137.    After paying Mrs. Heartsill's benefits for a period of time, Ascension / Sedgwick denied Mrs. Heartsill's claim for ongoing disability benefits, despite the fact that her multiple chronic medical conditions have not improved but instead worsened over time.

138.    Ascension / Sedgwick denied benefits to Mrs. Heartsill despite receiving medical records from a number of medical providers documenting her continued illnesses and conditions as well as the resulting restrictions and limitations.

139.    Ascension / Sedgwick denied benefits to Mrs. Heartsill despite receiving multiple reports from Dr. Abbott regarding Mrs. Heartsill's inability to perform the material duties of any occupation.

140.    Ascension / Sedgwick denied benefits to Mrs. Heartsill despite knowing she suffers from incurable chronic conditions of such severity that they permanently damaged her hips and jaws.

141.    Ascension / Sedgwick denied benefits to Mrs. Heartsill despite knowing that her arthritis was of such a debilitating nature that it forced her out of work and knowing that she still suffers from arthritis.

142.    Despite providing substantial evidence that she has been continuously disabled from working in any occupation, Ascension / Sedgwick, denied and continues to deny Mrs. Heartsill her long term disability benefits.

143.    At all relevant times, Mrs. Heartsill has been under the care of licensed medical doctors.

144.    As a result of the wrongful denial, Mrs. Heartsill was damaged in the amount of unpaid benefits.

145.    Defendant's denial of long term disability benefits was arbitrary and capricious, not based on substantial evidence and was the product of a conflict of interest and procedural irregularities.

146.    Defendants are required to pay the benefits due under the terms of the Plan, together with prejudgment interest, attorney's fees and costs.

WHEREFORE, Plaintiff Teresa Heartsill respectfully prays for judgment against Defendants Ascension and Sedgwick in the amount of unpaid benefits, for an Order that Ascension continue payments to Mrs. Heartsill under the terms of the Plan, for attorney's fees and costs and for any other such relief as the court deems just and proper.

Respectfully Submitted,

GALLAGHER DAVIS, LLP

*/s/ Brad Elkin*
Matthew R. Davis  MO58205
Brad Elkin MO54760
2333 S. Hanley Road
St. Louis, Missouri 63144
(314) 725-1780
Fax (314) 725-0101
matt@gallagherdavis.com
brad@gallagherdavis.com


Attorneys for Plaintiff